IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY PRATT, | : | Civil No. 1:12-CV-2364 |
| Plaintiff, | : | ( Judge Conner) |
| v. | : | (Magistrate Judge Carlson) |
| J. FISHER, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of The Case

This is a *pro se* civil rights case that was first brought by Jeffrey Pratt, a state inmate housed in the State Correctional Institution, Smithfield, through the filing of a complaint with the United States District Court for the Eastern District of Pennsylvania on October 21, 2012. (Doc. 1.) Along with his complaint, Pratt sought leave to proceed *in forma pauperis*, (Doc. 3.), which was granted by the district court (Doc. 5.), before this matter was transferred from the United States District Court for the Eastern District of Pennsylvania to this court on November 27, 2012. (Doc. 6.) This matter then came before the court for a legally-mandated screening review of this *pro se, in forma pauperis* pleading.

Pratt's original *pro se* complaint was a spare, terse, and largely illegible document. (Doc.1.) It named eleven correctional defendants, ranging from the prison

superintendent to librarians, medical staff, unit managers, and correctional supervisors and staff. (Id.) The complaint then contained a largely illegible one paragraph hand written narrative. (Id.) Much of this narrative simply could not be discerned, but what could be read seemed to repeat in a cursory fashion that each of these eleven defendants "refused to give this plaintiff his legal materials and law books for his legal needs.' (Id.) Beyond this summary assertion, which was unadorned by any accompanying facts, we could not identify or ascertain what Pratt was trying to allege in this pleading because we simply could not read this document. After reciting that this conduct violated the First, Fourth, Fifth, Eighth and Ninth Amendments to the United States Constitution, Pratt then demanded compensatory damages of $100,000,000 and punitive damages of $25,000,000 from the defendants jointly and severally. (Id.)

Upon a screening review of this complaint, we recommended that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this Report and Recommendation, provided that the plaintiff acted within 20 days of any dismissal order. (Doc. 8.) We made this recommendation because we found that, as presently drafted, Pratt's complaint violated the basic rule of pleading which requires that "a District Court . . . determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim

for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. In addition, dismissal of this complaint was also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

Dismissal of this complaint was appropriate since it is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper since a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of

action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complain fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Here, we found that Pratt's complaint was largely indecipherable and illegible. Without further coherence and clarity on Pratt's part, the defendants simply could not reasonably be expected to respond to this indecipherable document and would be "left [to] . . . having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011). Therefore, in these circumstances, Rule 8 called for the dismissal of this complaint in its current form.

Moreover, to the extent that it could be intelligibly read and understood, Pratt's complaint simply repeated in a summary fashion that various staff "refused to give this plaintiff his legal materials and law books for his legal needs." (Doc. 1.) Liberally construed, Pratt's complaint seemed to make three core claims in this regard, alleging that this activity violated the Fourth Amendment, deprived him of property without due process, and unconstitutionally interfered with his right of access to the courts.

As pleaded by Pratt, however, these claims were unavailing. At the outset, to the extent that the plaintiff was attempting to advance a Fourth Amendment claim in this prison setting, it was clear that this claim failed as a matter of law. While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010). As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

Florence, 621 F.3d at 301.

In Hudson v. Palmer, 468 U.S. 517, 529 (1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed plaintiff's Fourth Amendment claims relating to the seizure of items from him. In Block and Hudson the Supreme Court flatly held that the seizure of items from a cell by prison officials does not violate the Fourth Amendment. As the United States Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. Id. at 527. Mindful that internal security is a chief concern in prisons, the court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. Id. Therefore, "the Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001). Thus, it is beyond argument that the plaintiff did not enjoy a privacy right in his prison cell. For these reasons, plaintiff's Fourth Amendment constitutional claims lacked any legal merit.

Moreover, inmate due process claims arising out of the confiscation of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. In this case Pratt could not contend that he had no post-deprivation remedy for the confiscation of legal materials since Department of Corrections rules provided for just such a remedy, Pratt acknowledged the existence of this remedy, and alleged that he used these grievance procedures. (Doc. 1, Section V, A-B.).

Pratt's prospects on this particular claim did not improve if it was cast as an access to courts claim since Pratt could not show that he was denied access to the courts in a fashion which offends the Constitution. Pratt's complaint called upon us to consider the contours of the constitutional right of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).

As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied . . . . Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we

encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Thus:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. See Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." See id. at 416-17, 122 S.Ct. 2179.

Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008)

These legal tenets controlled here, and were fatal to Pratt's access to the courts claim as it was initially pleaded for at least two reasons. First, to make such a claim Pratt "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008). Here, Pratt's complaint identified no lost legal claims or remedies, essential prerequisites to a constitutional tort in this setting. Further, Pratt simply did not show actual concrete prejudice to him in the litigation of any particular case, the essential prerequisite to a constitutional claim in this setting. Therefore, this claim failed on its merits.

The district court adopted this Report and Recommendation on January 9, 2013, but provided Pratt twenty days in which to amend his complaint. (Doc. 12.) Pratt never attempted to comply with the court's January 9, 2013 order, and the time for filing such an amended complaint has now lapsed. On these facts, we recommend that this complaint be dismissed with prejudice.

**II.    Discussion**

In this case, Pratt was given this opportunity to further amend his complaint, but has now forfeited this opportunity through his inaction. In this situation, where a deficient complaint is dismissed without prejudice but the *pro se* plaintiff refuses to timely amend the complaint, it is well within the court's discretion to dismiss the

complaint with prejudice given the plaintiff's refusal to comply with court directives. Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007). In Pruden, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint. In terms that are equally applicable here the court observed that:

> The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. See In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." Id. (quoting Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994)).

Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007). Therefore, it is recommended that the complaint be dismissed for failure to state a claim without further leave to amend.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed as for failure to state a claim, with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 31st day of January 2013.

                                         ***S/Martin C. Carlson***
                                         Martin C. Carlson
                                         United States Magistrate Judge